**Terry PRESTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–00359–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 5, 1996.

James M. Leitner, Houston, for appellant.

Lester Blizzard, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Terry Preston appeals from his conviction by a jury for commercial bribery. TEX.PE-NAL CODE ANN. § 32.43 (Vernon 1983)[1]. The trial court assessed his punishment at seven years probation and $2,000.00 restitution. In five points of error, appellant contends: (1) the trial court erred in failing to submit a jury charge on accomplice witness testimony, (2) he was denied effective assistance of counsel, (3) and (4) the evidence is insufficient to support his conviction and, (5) the trial court erred in ordering restitution to a victim not named in the indictment. We affirm the judgment as modified.

Appellant was a supervisory electrical foreman for Northwestern Steel and Wire Company (the mill) in Houston on the date of the offense, November 30, 1992. The mill made steel products and needed a new automated cold saw process to cut steel faster. Mr. Mike Mullen, the mill's vice-president, testified the mill's management authorized appellant to find a vendor for the cold saw project and to get a bid on the project. Appellant and Scott Taylor were doing business as T & S Automation as evidenced by an assumed named certificate they filed with the County

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

Clerk in March, 1992, designating themselves as partners d/b/a T & S Automation (T & S). Appellant and Taylor met with David Kassing, the purchasing representative of Metsco, an electrical service company, for the purpose of getting a bid on the cold saw project. Kassing told appellant his company would do the job for $27,200.00. Appellant had been authorized by the mill to accept a bid of up to $40,000.00 for the job. Appellant told Kassing to bill the mill for $40,000.00 and T & S would take the difference. Kassing agreed to invoice the mill for the $40,000.00. A purchase order from the mill was sent to Metsco ordering the cold saw automation project at $40,000.00, with an indication typed on it stating: "Confirming order to Dave 12–1–92." The purchase order also indicated that the job was "Ordered by Preston." Appellant told Kassing to pay a "down payment" of $2,000.00 to T & S. Kassing had appellant execute an invoice, in his own handwriting, from T & S to Metsco, billing them for $2,000.00 for "40 hrs at $50.00 per hr" which invoice did not state what the work was for. The invoice was initialed by appellant as salesman "TMP" and dated December 10, 1992. Kassing gave appellant a $2,000.00 check payable to T & S, dated December 11, 1992, drawn on Metsco, and signed by Kassing and another officer of Metsco. The $2,000.00 check was endorsed by appellant, "T & S AUTOMATION," and signed by appellant, "Terry M. Preston." The check was deposited to appellant's bank account, First Gibraltar, under the the name Terry M. Preston DBA T & S Automation, on December 12, 1992. On December 21, 1992, Kassing went to Mike Mullen's office at the mill and delivered the bill from Metsco in the original amount of $40,000.00. The bill was marked through with a handwritten notation stating, "Don't Pay." Written beneath the $40,000.00 figure typed on this bill was the sum, "27,200.00." At the same time, Kassing delivered to Mike Mullen a corrected invoice from Metsco dated December 21, 1992, in the sum of $27,200.00 with the typewritten notation, "Cold saw automation project. This invoice voids invoice no. 0090 dated 12/8/92 for $40,000.00. Please do not pay 0090." Appellant did not testify and Scott Taylor did not testify.

■ In point of error one, appellant claims the trial court erred in failing to instruct the jury that Kassing was an accomplice witness and his testimony had to be corroborated pursuant to article 38.14 of the Texas Code of Criminal Procedure, which provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

■ An accomplice witness is someone who has participated with someone else before, during or after the commission of a crime. *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Crim.App.1986) *cert. denied,* 510 U.S. 840, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993). If the witness cannot be prosecuted for the offense with which the accused is charged, then the witness is not an accomplice witness as a matter of law. *Id.* If there is doubt whether a witness is an accomplice witness, the trial court may submit the issue to the jury even though the evidence weighs in favor of the conclusion that the witness is an accomplice as a matter of law. *Id.*

Kassing and appellant met at the mill for the purpose of making a bid on the cold saw project. Kassing bid $27,200.00 and appellant told Kassing to make his bid for $40,000.00 and bill the mill for that amount and "T & S would take the difference." Kassing testified that he wanted the business and agreed to the proposition and a written "purchase requisition" for $40,000.00, dated November 30, 1992, whereby Metsco would complete the cold saw project for that amount, was prepared by appellant and approved by Mike Mullen. Mr. Mullen testified that the initials on this exhibit were his and he approved the $40,000.00 order for the cold saw. On the following day, a purchase order for the $40,000.00 approved figure was sent to Metsco by the mill, dated December 1, 1992. On December 10, 1992, appellant prepared an invoice for $2,000.00 which purported to be from T & S Automation to Metsco for forty hours of unspecified work at $50.00 per hour. Appellant was then given

the $2,000.00 check from Metsco payable to T & S Automation, signed by Kassing and another officer of Metsco, dated December 11, 1992, and endorsed and deposited by appellant in the First Gibraltar Bank. All of these documents were duly placed into evidence as exhibits in support of the state's contention that appellant solicited and accepted a "kickback" from Kassing for giving Kassing's company the cold saw job.

Section 32.43(b) of the Texas Penal Code provides: "A person who is a fiduciary commits an offense if, without the consent of his beneficiary, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to the affairs of his beneficiary." Section 32.43(a)(2) provides that "fiduciary" means "(A) an agent or employee." Section 32.43(b) makes it an offense to solicit and accept the bribe, as was done by appellant, an employee of the mill. Subsection (c) makes it an offense to offer or agree to confer the bribe, as was done by Kassing. Therefore, Kassing was an accomplice as a matter of law by virtue of having affirmatively participated in the commission of the offense of soliciting and accepting a bribe by having offered or conferred the bribe. *Kunkle*, 771 S.W.2d at 439. He could have been prosecuted under subsection (c), article 32.43, but was not for reasons that do not appear in the record. Kassing was asked if he had been indicted for the offense, and he stated there was no criminal prosecution initiated or pending against him for his part in the crime. However, his affirmative participation in the commission of the crime, even though he was not indicted or charged, makes him an accomplice witness as a matter of law. *Kunkle*, 771 S.W.2d at 439.

The accomplice witness rule was set forth recently in *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App.1994), as follows:

The accomplice witness rule is required by neither common law nor constitution. *Thompson v. State*, 691 S.W.2d 627, 631 (Tex.Crim.App.1984). The rule simply reflects a legislative determination that accomplice testimony that implicates another should be viewed with some level of caution. *Paulus v. State*, 633 S.W.2d 827, 843 (Tex.Crim.App.1982). Under the rule it is not necessary for the non-accomplice evidence to be sufficient in itself to establish the accused's guilt beyond a reasonable doubt. *Reed v. State*, 744 S.W.2d 112, 126 (Tex.Crim.App.1988). Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *Reynolds v. State*, 489 S.W.2d 866, 872 (Tex.Crim.App.1972). All that is required is that there be *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment. *Gosch v. State*, 829 S.W.2d 775, 777 (Tex.Crim.App.1991). Judicial experience shows that no precise rule can be formulated as to the amount of evidence that is required to corroborate the testimony of an accomplice witness. *Paulus v. State*, 633 S.W.2d at 844. Each case must be judged on its own facts. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim.App.1993).

*Id.* at 48.

■ Appellant neither objected to Kassing's testimony nor requested an accomplice-witness instruction to the jury. If no proper objection was made at trial, the defendant must claim that the error was "fundamental," and the judgment will be reversed only if the error is so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

■ If there is no objection to the failure to charge the jury on the accomplice witness rule, we must review "whether jurors would have found the corroborating evidence so unconvincing as to render the State's overall case for conviction clearly and significantly less persuasive." *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991). The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

Viewed in the light most favorable to the jury's verdict, the non-accomplice evidence in this case established the following: (1) appellant was paid $2,000.00 by a check from Metsco for "40 hrs at $50.00 per hr" pursuant to appellants invoice from appellant's business, T & S Automation, to Metsco, dated Dec. 10, 1992; (2) Mike Mullen, the vice president of the mill testified T & S did not have the mill's consent to receive any part of the $40,000.00 to be paid to Metsco; (3) Mullen identified the purchase requisition from the mill to Metsco prepared by appellant, dated December 1, 1992, indicating the mill would pay $40,000.00 to Metsco for the completion of the project; (4) Mullen testified appellant did not have authority of the mill to accept any money from "the individual that was going to work on this project"; (5) Mullen testified that the mill received two invoices from Metsco for the job, one for $40,000.00 and one for $27,200.00, and that the vendor had reduced the price of the original $40,000.00 bid "based on the fact that he was paying the balance to Terry"; (6) Mullen talked to Kassing on the morning of December 21, 1992, about the invoices and as a result of their conversation, Mullen turned the matter over to the mill's human resources department for investigation; (7) Mullen testified that appellant was fired December 22, 1992, for his participation in the scheme revealed to Mullen by Kassing in their meeting of December 21, 1992; (8) Charles Hallmark, bank officer, authenticated the appellant's bank records and the fact that the $2,000.00 Metsco check payable to T & S Automation was in fact signed by appellant and deposited to his account with the bank.

In this case, the non-accomplice evidence proved appellant was in exclusive possession of the $2,000.00 check from Metsco representing the amount of money Kassing and appellant agreed upon as a down payment on the difference between the $40,000.00 bid and the true bid of $27,200.00. Any payment out of the difference to T & S Automation or the appellant was not approved by the mill. The non-accomplice evidence shows appellant was in possession of the "fruits of the crime." Possession by the accused of fruits of the crime tends to connect him with the commission of the crime and may be sufficient corroboration of accomplice witness testimony. *Lyman v. State*, 540 S.W.2d 711, 714 (Tex.Crim.App. 1976). The rule that *sole* possession of the fruits of the crime tends to connect the accused with the commission of the crime was extended in *Gill*, 873 S.W.2d at 49, to fact situations which include non-accomplice evidence that the possession of the stolen items was joint rather than exclusive, disavowing the "sole possession" requirement set out in *Rubio v. State*, 121 Tex.Crim. 621, 50 S.W.2d 294, 295 (App.1932) wherein the court held the non-accomplice evidence insufficient because "there was a failure to show that the appellant had exclusive personal possession" of the stolen item. The possession of the $2,000.00 check in this case was exclusive in the appellant as proved by the non-accomplice banker, Charles Hallmark, testifying that the check was endorsed and deposited to T & S Automation by appellant. However, the evidence also shows that T & S Automation was a partnership comprised of Scott Taylor and appellant, but there is no evidence showing that the possession of the check and deposit to that business account was other than exclusive to appellant. This coupled with the purchase requisition prepared by the appellant for the $40,000.00 payment to Metsco for the cold saw project which later was reduced to $27,200.00 as originally bid, tends to connect appellant to the testimony of the accomplice Kassing that he agreed to the kickback to appellant and authorized his company, Metsco, to pay T & S the $2,000.00 as a down payment. Also, the testimony of Mullen indicates disapproval by the mill of any payments, whatsoever, by Kassing or Metsco, to T & S or appellant. The evidence indicates $27,200.00 was paid by the mill to Metsco for the project as originally bid by Kassing and $2,000.00 was paid by Metsco to appellant as a kickback. The kickback was paid as a result of appellant soliciting a bribe from Kassing. The evidence shows an agreement by Kassing to the terms of the bribe and payment of the bribe by Kassing, with the $2,000.00 Metsco check, to appellant. We find that reasonable jurors could conclude that the non-accomplice

evidence, when viewed as a whole, tended to connect appellant to the offense committed. *Gill*, 873 S.W.2d at 49. We hold that any error in failing to charge the jury on the accomplice-witness rule was not so egregious as to deny appellant a fair and impartial trial. *Saunders*, 817 S.W.2d at 692. We overrule appellant's point of error one.

■ In point of error two, appellant claims he was denied effective assistance of counsel by counsel's failure to request an accomplice witness charge be submitted to the jury.

A defendant in a criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Ex Parte Duffy*, 607 S.W.2d 507, 513 (Tex.Crim. App.1980). Texas follows the federal standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that standard, a defendant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Essentially, appellant must show that: (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is defined as probability sufficient to undermine confidence in the outcome. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App.1992), *cert. denied*, 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992).

Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland*, 466 U.S. at 670, 104 S.Ct. at 2056. The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim. App.1984).

Although we find that Kassing was an accomplice witness as a matter of law, we have also found the record reflects sufficient corroboration was provided by the testimony of the other non-accomplice witnesses and the exhibits as set forth in this opinion. This is the only instance of ineffective assistance of counsel claimed by appellant. When the totality of the representation afforded appellant is considered, we find this representation was not ineffective.

The evidence of appellant's guilt was overwhelming. Evidence of the unexplained possession of the "fruits of the crime" (the $2,000.00 check to T & S from Metsco) plus the testimony of the testimony of Mike Mullen that appellant was not authorized to receive any part of the $40,000.00 for the cold saw project would corroborate the testimony of Kassing as to the bribe. In face of the overwhelming evidence of his client's guilt, appellant's trial counsel may have considered it sound trial strategy not to object to the charge knowing such an objection would not help his case and an accomplice witness charge might confuse the jurors. An appellate court will not use hindsight to second guess a tactical decision made by trial counsel, which does not fall below the objective standard of reasonableness. *Solis v. State*, 792 S.W.2d 95, 100 (Tex.Crim.App.1990). Having found trial counsel was not ineffective for failing to object to the jury charge and request an accomplice witness instruction, we overrule appellant's point of error two.

■ In points of error three and four, appellant contends the evidence is insufficient to support the conviction because the non-accomplice evidence was not sufficient to corroborate Kassing's testimony and was legally insufficient to support the conviction.

We have set out the non-accomplice evidence in detail under our discussion under appellant's point of error one as required by

*Almanza* and do not repeat it here. We hold that the non-accomplice evidence was legally sufficient to corroborate the testimony of the accomplice Kassing. In so doing, we reviewed all the evidence presented in the trial of this case as required by *Almanza.*

■ We measure the sufficiency of the evidence against the charge given the jury in the application paragraph. *Jones v. State,* 815 S.W.2d 667, 669–70 (Tex.Crim.App.1991). In reviewing the sufficiency of the evidence in the light most favorable to the verdict or judgment, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Ransom v. State,* 789 S.W.2d 572, 577 (Tex.Crim.App. 1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App.1986).

In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim.App.1993).

We find that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and the evidence is sufficient to sustain appellant's conviction. We overrule appellant's points of error three and four.

■ In point of error five, appellant contends the trial court erred in ordering restitution to an entity not named in the indictment in this cause. Specifically, he argues that appellant was ordered to pay, as restitution, $2,000.00 to Metsco and, if the company cannot accept payment, then the money is to be paid to crime stoppers in Houston. Appellant contends this order violates state law and should be deleted from the judgment. Appellant cites *Martin v. State,* 874 S.W.2d 674 (Tex.Crim.App.1994) as authority for his argument that Metsco was not a "victim of the offense of conviction" since Metsco was

not the named victim in the indictment. We agree.

*Martin* construed Article 42.12, section 11(b), Texas Code of Criminal Procedure, which provided:

(b) A court may not order a probationer to make any payment as a term and condition of probation, except for fines, court costs, *restitution to the victim,* and other terms or conditions related personally to the rehabilitation of the probationer or otherwise expressly authorized by law.

*Id.* at 676.

■ In *Martin,* the court of criminal appeals held that this limitation of restitution to "the victim" refers to the victim of the crime for which the defendant has been charged, convicted and sentenced. *Id.* at 677. The court did not define who would be a "victim" and stated: "We see no evidence in the language of article 42.12 § 11 or otherwise to indicate that the legislature intended that restitution may be ordered payable to persons other than the victim of the offense of conviction, who also suffered as a result of a scheme of which the offense of conviction was a part." *Id.* at 679. In this case, Kassing was named in the indictment as the person who paid money to appellant to influence appellant's conduct with appellant's company. Kassing was the agent, *partner* and *part-owner* of Metsco. Kassing used Metsco's money to buy the conduct of appellant and signed the check to appellant. There is no evidence in the record to show that Metsco was a willing participant, knew anything about the $2,000.00 payment, or claimed it was defrauded by its partner, Kassing. Kassing was never charged or indicted for any crime. There is nothing in the record that would establish Metsco as a "victim" of the crime. The evidence tends to show Metsco participated in the crime by furnishing the bribe money to appellant. Accordingly, the condition of probation requiring restitution to Metsco of the $2,000.00 bribe is invalid; Metsco was not a "victim." *Martin,* 874 S.W.2d at 679. At best, Metsco's partners, other than Kassing, "also suffered as a result of a scheme of which the offense of conviction was a part." *Id.* Furthermore, the designa-

tion of crime stoppers Houston as an alternative recipient of the $2,000.00 restitution should Metsco not accept it, is likewise invalid. Crime stoppers is likewise not a "victim" entitled to restitution. Crime stoppers is entitled to only one payment in an amount not to exceed $50.00 pursuant to article 42.12, section 11(a)(23), Texas Code of Criminal Procedure. The crime stoppers payment can be made a condition of probation, but we find no authority whereby crime stoppers can be the recipient of a victim's restitution pursuant to article 42.12, section 11(b), Texas Code of Criminal Procedure, which specifically directs *restitution to the victim* only. *Id.* at 676.

Where a trial court imposes an invalid condition of probation, the proper remedy is to reform the judgment by deleting the invalid condition. *Ex parte Pena,* 739 S.W.2d 50, 51 (Tex.Crim.App.1987). Accordingly, we reform the judgment by deleting the requirement that appellant pay $2,000.00 to Metsco or to crime stoppers Houston, as an alternative recipient. We find the remaining conditions of probation to be valid. Appellant's point of error five is sustained as to his complaint about the restitution provision only. Appellant's point of error five as to the remaining conditions of his probation is overruled. *See also Martinez v. State,* 874 S.W.2d 267, 268 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

The judgment of the trial court is affirmed as modified.