Randy Ridenour d/b/a Randy Ridenour Independent v. Kit Herrington and Howard Jackson















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-040-CV

Â Â Â Â Â RANDY RIDENOUR D/B/A
Â Â Â Â Â RANDY RIDENOUR INDEPENDENT,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â KIT HERRINGTON
Â Â Â Â Â AND HOWARD JACKSON,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
 

From the 13th District Court
Navarro County, Texas
Trial Court # 98-00-08507-CV
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â This is an oil and gas case. The issue is cessation of production in paying quantities. The
trial court granted summary judgment, holding that an oil and gas lease had terminated according
to its terms and conditions. We affirm the summary judgment.
Historical and Procedural Background
Â Â Â Â Â Â In 1995, Randy Ridenour, d/b/a Randy Ridenour Independent, entered into an oil and gas
lease with Kit Herrington and Howard Jackson. The lease was on mineral interest located in
Navarro County, Texas.
Â Â Â Â Â Â Corsicana, the county seat of Navarro County, is the home of the oldest commercial oil field
west of the Mississippi River. This field has been producing since the late 1800's. It was
discovered when the city of Corsicana was drilling a water well. Historically the oil production
from this area is from shallow wells. Many old wells in the area continue to produce small
quantities of oil. Production is marginal, but the cost of production is nominal. These marginal
production wells are frequently referred to as âstripperâ wells.
Â Â Â Â Â Â Ridenour had operated the wells on the Herrington/Jackson lease prior to the 1995 lease. 
There was some question as to whether the prior lease had terminated, so the parties executed a
new lease with some additional terms. The 1995 lease had a one-year primary term. It also had
the usual provision that the lease continued beyond the primary term âas long thereafter as oil, gas
or other mineral is produced from said land . . . .â This clause has been judicially construed to
mean that the lease continues in force for so long as oil, gas or other minerals are produced in
âpaying quantities.â
Â Â Â Â Â Â The lease also had a clause that is sometimes used to further define âproduction in paying
quantities.â The particular provision in this lease was stated as follows:
The primary term of this lease shall be one year, and after the expiration of one year
from the date hereof, paying production as that term is interpreted by Texas law shall be
necessary to perpetuate this lease. Cessation of paying production after the primary term
for a period of sixty days shall cause this lease to terminate.
(Emphasis added)(C.R. page 16).
Â Â Â Â Â Â Herrington/Jackson sued Ridenour alleging that there had been no âpaying productionâ and
âthat at least one period of sixty days or more, without production, has occurred after expiration
of the primary term.â Approximately one year after the case was filed, Herrington/Jackson
moved for summary judgment. The basis of the motion was stated as follows: 
Plaintiffs show hereby that the summary judgement evidence clearly establishes a
cessation of paying production sufficient to cause a termination of the subject lease . . .
. Plaintiffs will further show that when the facts and circumstances of termination are
clearly demonstrated to the court, such an issue becomes an issue of law rather than fact
and is the proper subject of a motion for summary judgement or instructed verdict.

(C.R. page 14).
Â Â Â Â Â Â In support of the motion for summary judgment, Herrington/Jackson filed an affidavit of an
oil and gas expert, a business records affidavit attaching invoices for work on the well, and
certified copies of Railroad Commission P-4 reports. These reports are filed with the Railroad
Commission each month to report the oil produced from each lease.
Â Â Â Â Â Â In response to the summary judgment motion and evidence, Ridenour responded and filed his
own affidavit in support of his response. He asserts in his response:
The attached affidavit of Defendant Randy Ridenour puts facts into issue regarding the
second prong of that test, âwhether a reasonably prudent operator would, for the purpose
of making a profit and not merely for speculative purposes, continue to operate the
subject lease.â

(C.R. page 69). Ridenourâs affidavit states that he is âunaware of any period of sixty (60) days
or more in which the Lease did not produce in paying quantitiesâ and that in his opinion âa
reasonably prudent operator would continue to operate this lease for the purpose of obtaining a
profit from such production.â (C.R. page 77).
Â Â Â Â Â Â The trial court granted the summary judgment, holding that the lease had terminated according
to its terms and conditions. The trial court did not specify the manner in which the lease provision
regarding cessation of production had been violated, thus causing the lease to terminate.
Summary Judgment
Â Â Â Â Â Â The function of summary judgment is not to deprive a litigant of the right to a full hearing on
the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable
defenses. See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The purpose of
the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but
rather to provide a method of summarily terminating a case when it clearly appears that only a
question of law is involved and that no genuine issue of fact remains. See Gaines v. Hamman, 163
Tex. 618, 358 S.W.2d 557, 563 (1962). The summary judgment motion must expressly present
specific grounds for summary judgment. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d
337, 341 (Tex. 1993); Sullivan v. Bickel & Brewer, 943 S.W.2d 477, 480 (Tex. App.âDallas
1995, writ denied).
Â Â Â Â Â Â When, as here, the plaintiff moves for summary judgment, the plaintiff must conclusively
prove all elements of its cause of action as a matter of law. Nationwide Property & Casualty Ins.
Co. v. McFarland, 887 S.W.2d 487, 490 (Tex. App.âDallas 1994, writ denied); see Tex. R. Civ.
P. 166a(c). A matter is conclusively established if ordinary minds could not differ as to the
conclusion to be drawn from the evidence. Triton Oil & Gas Corp. v. Marine Contractors &
Supply, Inc., 644 S.W.2d 443, 446 (Tex. 1982). Once the plaintiff establishes its right to
summary judgment, the burden then shifts to the defendant as non-movant to present evidence
which raises a genuine issue of material fact, thereby precluding summary judgment. See City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979); Muckelroy v. Richardson
Indep. Sch. Dist., 884 S.W.2d 825, 828 (Tex. App.âDallas 1994, writ denied).
Â Â Â Â Â Â The question on appeal is whether the summary-judgment proof establishes, as a matter of
law, that there is no genuine issue of fact as to one or more of the essential elements of the cause
of action. See Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). Where, as
here, the summary judgment does not state the grounds upon which it was granted, the non-movant must show on appeal that each independent ground alleged is insufficient to support the
summary judgment granted. Orozco v. Dallas Morning News, Inc., 975 S.W.2d 392, 394 (Tex.
App.âDallas 1998, no pet.); Thomson v. Norton, 604 S.W.2d 473, 476 (Tex. App.âDallas 1980,
no writ). If a movant does not show its entitlement to judgment as a matter of law, we must
remand the case to the trial court for further proceedings. See Gibbs, 450 S.W.2d at 829; Texas
Stadium Corp. v. Savings of Am., 933 S.W.2d 616, 618 (Tex. App.âDallas 1996, writ denied).
Â Â Â Â Â Â The standards for reviewing summary judgment under Rule 166a(c) are well established. See
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985); Orozco, 975 S.W.2d
at 394. In reviewing a summary judgment record, this Court applies the following standards:
1. The movant for summary judgment has the burden of showing that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of law. 
Â 
2. In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true. 
Â 
3. Every reasonable inference must be indulged in favor of the non-movant and any
doubts resolved in its favor.

Nixon, 690 S.W.2d at 548-49; Walstad v. Dallas County Bail Bond Bd., 996 S.W.2d 314, 315
(Tex. App.âDallas 1999, no pet.).
Applicable Law
Â Â Â Â Â Â The two leading cases in Texas on production-in-paying-quantities and cessation-of-production
are Garcia v. King and Clifton v. Koontz. Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684
(1959); Garcia v. King, 139 Tex. 578, 164 S.W.2d 509 (1942). Garcia established that the clause
in an oil and gas lease that the lease will continue after the primary term âfor so long thereafter
as oil, gas and other minerals is producedâ meant paying production, or production in paying
quantities. Garcia, 164 S.W.2d at 513. This meant that the well could not be held by the operator
for speculation with little or no production. Clifton established that without a specific definition
of the time period to measure production-in-paying-quantities, it was measured over a reasonable
period of time and that other âsavings clauses,â such as continuous operations, did not come into
effect until production in paying quantities had ceased. Clifton, 325 S.W.2d at 690. When a lease
fails to define what constitutes a temporary cessation of production, Texas courts have repeatedly
found that a âtemporary cessationâ clause is ânecessarily impliedâ in the lease. Midwest Oil
Corp. v. Winsauer, 159 Tex. 560, 323 S.W.2d 944, 946 (1959); Guinn Investments, Inc. v. Ridge
Oil Company et. al., No. 02-00-055-CV, slip op. at 10 (Tex. App.âFort Worth March 15, 2001,
no pet. h.).
Â Â Â Â Â Â But if the lease defines the period for which production-in-paying-quantities is to be measured,
the court does not resort to a âreasonable period of timeâ over which to evaluate the profitability
of production. As noted above, the lease in this case defined the time period over which
production was to be evaluated to determine if production-in-paying-quantities had ceased as 60
days. Further, âno analysis of whether production was in paying quantities is necessary if the
evidence establishes no production at all.â Natural Gas Pipeline Co. of America v. Pool, 30
S.W.3d 618, 626 (Tex. App.âAmarillo 2000, pet. filed); see also Natural Gas Pipeline Co. of
America v. Pool, 30 S.W.3d 639, 647 (Tex. App.âAmarillo 2000, pet. filed); Bachler v.
Rosenthal, 798 S.W.2d 646, 650 (Tex. App.âAustin 1990, writ denied.). A total, physical
cessation of production conveys an unambiguous message: either a well is in need of reworking
or repair, or it has permanently drained the reservoir. In either case, it is more reasonable in such
circumstances to expect the operator to take immediate action or suffer termination of the lease. 
Bachler, 798 S.W.2d at 650. Cessation of production for the number of consecutive days stated
in the leaseâs cessation-of-production clause automatically terminates the lease, without regard to
the reasonableness of the operatorâs actions. Id. 
Application
Â Â Â Â Â Â The summary judgment evidence in this case is undisputed on at least one issue: there was no
production from this lease from February 1999 to July of 1999, a period of six months. We hold
that reasonable minds could not differ that the failure to have any production for a period of time
longer than 60 days, under this lease, constitutes the failure to have production in paying
quantities. Thus, as a matter of law, Herrington/Jackson proved that the lease had ceased
production in paying quantities and accordingly the lease had terminated by its own terms and
conditions. The trial court did not err in granting summary judgment. The trial courtâs judgment
is affirmed.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Affirmed
Opinion delivered and filed April 25, 2001
Publish 



Jones on the night of the
theft.  Only after receiving a call from Jones did Franklin return to lock the
studio. Â The next day, Franklin and Jones traveled to Houston.Â  Franklin drove, while Jones provided directions.Â  In his statement, Franklin told police
that he knew where the ÂstuffÂ came from, touched nothing, did not know the
Âexact placesÂ where the equipment was disposed and denied taking the equipment
to pawn shops.Â  At trial, Franklin claimed the statement was incorrectly
transcribed.

This evidence raises two fact
issues: (1) whether Franklin was merely present at the scene or whether his act
of providing Jones access to the studio constituted an affirmative act
promoting the theft; and (2) whether Franklin acted with the required degree of
culpability or lacked any knowledge of JonesÂs intent to commit the theft.Â  See Paredes, 129 S.W.3d at 536.[2]Â  Franklin may have allowed Jones access with the understanding
that Jones only desired to use the studio lounge.Â  Conversely, Franklin may have been involved in planning the theft, having agreed to unlock the studio in
order to enable Jones to commit the theft. Â Â Â Â 

Either way, the evidence raises a fact issue as
to whether Franklin is an accomplice.Â  The court erred by failing to submit the
issue of FranklinÂs status as an accomplice to the jury.Â  See Paredes,
129 S.W.3d at 536.

Nevertheless, because Jones failed to object to
the courtÂs omission, he must prove that the error caused him egregious harm.Â  See
Herron v. State, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).Â  Omission of an accomplice-witness
instruction is harmless unless Âcorroborating (non-accomplice) evidence is Âso
unconvincing in fact as to render the StateÂs overall case for conviction
clearly and significantly less persuasive.ÂÂ Â Id.

A defendant cannot be convicted on the basis of
accomplice testimony unless it is corroborated.Â  See Tex. Code
Crim. Proc. Ann. art. 38.14 (Vernon Supp. 2005); see also Cathey v. State, 992 S.W.2d 460, 462 (Tex.
Crim App. 1999). Â Corroboration is insufficient
if it Âmerely shows the commission of the offense,Â but is sufficient if
it tends to connect the defendant to the offense.Â  Tex. Code Crim. Proc.
Ann. art. 38.14.[3]
Â Corroborative evidence may be Âcircumstantial or direct.Â Â Reed v. State, 744 S.W.2d 112, 126 (Tex.
Crim. App. 1988).

In deciding the issue of
corroboration, we eliminate the accompliceÂs testimony from consideration and Âexamine
the other inculpatory evidence to ascertain whether the remaining evidence
tends to connect the defendant with the offense.ÂÂ  McDuff v. State, 939 S.W.2d 607, 612 (Tex.
Crim. App. 1997).Â  Examples of corroborating non-accomplice testimony include the defendantÂs:
(1) presence Âin the company of the accomplice at or near the time or place of a
crime;Â (2) presence Âat or near the place where the crime occurred at or about
the time that it happened;Â (3) Âguilty demeanor;Â (4) possession of the fruits of the crime; and (5)
motive.[4]Â  Hernandez v. State, 939 S.W.2d 173, 178 (Tex.
Crim. App. 1997); Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992); see Lyman v. State, 540 S.W.2d 711, 714 (Tex. Crim.
App. 1976); see also Preston v. State,
934 S.W.2d 901, 906 (Tex. App.ÂHouston [14th Dist.] 1996, pet dismÂd); Reed,
744 S.W.2d at 127.

The record contains sufficient
corroborative non-accomplice testimony tending to connect Jones to the theft.Â  Heslip
testified that because she refused to post JonesÂs bond, he was unable to join
a trip to Las Vegas with the studio.Â  According to Heslip and Johnson, the theft occurred
only a few days after JonesÂs release from jail.Â  Officer Blackburn and Detective Jones both
testified to the lack of damage to the studioÂs exterior doors.Â  Detective
JonesÂs testimony suggested an Âinside job,Â in that someone deactivated the
alarm and the studioÂs interior damage appeared staged.

Furthermore, Jones told both Heslip
and Officer David Blackburn that he was present at the studio, having asked Franklin to unlock the studio.Â  Martin confirmed these facts.Â  Jones also told Johnson that
the studio was being cleaned; this too places him at the scene of the crime.Â  In
fact, on the night of the theft, Jones instructed Johnson to contact him at a
certain time, but to contact Franklin and say ÂoopsÂ if Jones failed to answer
the phone.Â  That same night, Johnson observed Jones carrying Âcords and stuffÂ
into her house and overheard Jones mentioning serial numbers.Â  Upon returning
from Houston, Jones told Johnson that he sold the Âstuff.Â Â JonesÂ  purchased a new
motorcycle shortly after the theft.Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

This non-accomplice testimony establishes
that Jones: (1) possessed the opportunity to commit the theft as an employee familiar
with the studio and its equipment; (2) possessed a motive for committing the
theft because he was angry about HeslipÂs refusal to post bond for him; (3) was
present at the studio on the night of the theft; (4) was in the company of
Franklin while present at the studio; (5) exhibited guilty behavior following
the theft that indicated his involvement in the theft; and (6) was in
possession of the equipment after the theft.Â  See Hernandez, 939 S.W.2d at 178; see also Cox, 830 S.W.2d at
611; Lyman, 540 S.W.2d at 714; Preston, 934 S.W.2d at 906; Reed,
744 S.W.2d at 127.Â  Collectively,
these factors constitute sufficient corroboration and tend to connect Jones to
the theft; thus, the
jury could
reasonably conclude that Jones committed the theft.Â  See Hernandez, 939 S.W.2d at 178.

Therefore, the evidence was not
so weak as to either make the StateÂs case any less persuasive or deprive Jones
of a fair trial.Â  See Herron, 86 S.W.3d at 632.Â  Because Jones did not
suffer egregious harm, he is not entitled to a reversal.Â  We overrule JonesÂs second point of error.

The judgment is affirmed.

Â 

Â  

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 30, 2006

Do not publish

[CR25]

Â 









[1] Â Â Â Â Â Â Â Â Â  Where a person is not an
accomplice, Âno charge need be given to the jury either that the witness is an
accomplice witness as a matter of law or in the form of a fact issue whether
the witness is an accomplice witness.ÂÂ  Gamez v. State, 737
S.W.2d 315, 322 (Tex. Crim. App. 1987).





[2] Â Â Â Â Â Â Â Â Â  A person commits theft if he
Âunlawfully appropriates property with intent to deprive the owner of
property.Â Â Tex. Pen. Code Ann. Â§
31.03(a) (Vernon 2003).Â  Therefore, the offender must intend to deprive
the owner of property.Â  See id.





[3] Â Â Â Â Â Â Â Â Â  It is not necessary that
corroborative evidence establish the defendantÂs guilt or Âdirectly connect the
defendant to the crime.Â Â Cathey
v. State, 992 S.W.2d 460, 462
(Tex. Crim App. 1999).





Â 

[4] Â Â Â Â Â Â Â Â Â  Other examples of corroborating
non-accomplice evidence include: (1) subsequent flight; (2) proof connecting the
defendant to a weapon Âsimilar to that used in the offense;Â and (3) defendant possessed
a gun similar to the weapon used to commit the offense.Â  See Hernandez
v. State, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997); see also May v. State, 738 S.W.2d 261, 267 (Tex. Crim. App. 1987).