**Ruth Edna BACHLER, Julia Carol Pletcher, Roland E. Busch and Lela Kathryn Busch, Appellants,**

v.

**Stanley H. ROSENTHAL, Stephen J. Forman and Maury B. Forman, as Independent Co-Executors of the Estate of Sol Forman, Deceased, and Leon Noack, Appellees.**

No. 3-89-254-CV.

Court of Appeals of Texas, Austin.

Nov. 14, 1990.

Rehearing Overruled Dec. 12, 1990.

Frank R. Parish, Parish & Ellison, Houston, for appellants.

Aaron L. Jackson, Ford, Ferraro, Fritz & Byrne, Austin, for appellees.

Before POWERS, JONES and EARL W. SMITH [*], JJ.

## ON MOTION FOR REHEARING

JONES, Justice.

The opinion and judgment issued by this Court on August 8, 1990, are withdrawn, and this opinion is filed in place of the earlier one.

The lessors of an oil and gas lease, Ruth Edna Bachler and others [1] (lessors), brought suit against the lessees, Stanley H. Rosenthal and others [2] (lessees), seeking cancellation of the lease as a result of the lessees' alleged cessation of production. The trial court granted the lessees' motion for summary judgment, and the lessors perfected this appeal. We will reverse the judgment.

---

[*] Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

[1] The lessors are Ruth Edna Bachler, Julia Carol Pletcher, Roland E. Busch, and Lela Kathryn Busch.

[2] The lessees are Stanley H. Rosenthal, Stephen J. Forman and Maury B. Forman, as Independent Co–Executors of the Estate of Sol Forman, Deceased, and Leon Noack.

## BACKGROUND

The lessors' predecessors-in-title entered into an oil and gas lease with appellee Leon Noack on December 31, 1968. Noack assigned the lease to appellee Rosenthal, who subsequently assigned an overriding royalty interest to Noack. The provisions of the lease pertinent to this action are as follows:

Paragraph 2:

Subject to other provisions herein contained, this lease shall be for a term of 5 years from this date (called "primary term") *and as long thereafter as oil, gas or other mineral is produced* from said land or land with which said land is pooled hereunder.

Paragraph 6:

[I]f after discovery and production of oil, gas or other mineral [on said land], the production thereof should cease from any cause, *this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter.* . . .

(Emphasis added.) The lease was operated profitably beyond its primary term, and the lease term was thereby extended. Beginning in August 1986, physical production from the lease decreased (as did the price of oil), and for at least a short time ceased altogether. However, following reworking operations in November 1986 and again in March 1987, consistently profitable production was restored beginning in approximately April 1987.

Notwithstanding the restoration of profitable production, the lessors brought suit to cancel the lease, alleging that production had ceased and that more than sixty days had elapsed before reworking operations began. After filing general denials, the lessees filed motions for summary judgment, along with supporting affidavits, contending that the evidence conclusively established that production had never ceased. The lessors filed a written response. The trial court granted the lessees' motion.

The standards for granting a summary judgment are well established:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). "[T]he non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (emphasis in original).

In their second and third points of error, the lessors contend that the lessees failed to show they were entitled to judgment as a matter of law because they failed to prove conclusively that production was continuous, i.e., never ceased.

■ In our original opinion, we pointed out that the word "production" in the habendum clause of an oil and gas lease impliedly means production "in paying quantities," i.e., profitable production. *Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509 (1942). "Production," therefore, generally refers to *legal* production rather than *physical* production. The traditional legal test to determine whether there is production in paying quantities is two-pronged:

[T]he burden [is] on the [lessors] to prove that [the lessee] was not making a profit from operation of the well. If they fail to produce evidence which establishes that fact as a matter of law or fail to obtain a fact finding, supported by evidence, to that effect, the lease should not be terminated. If, on the other hand, the evidence establishes as a matter of law that [the lessee] was not making a profit from the well or if there is a fact finding, supported by evidence, to that effect, the lease should yet not be terminated unless

the evidence establishes as a matter of law or the [lessors] obtain a fact finding, supported by evidence, that a reasonably prudent operator would not have continued to operate the well under the circumstances.

*Skelly Oil Co. v. Archer*, 163 Tex. 336, 356 S.W.2d 774, 783 (1962). Thus, we concluded that the issues in this case were: (1) whether revenues from production exceeded operating and marketing expenses, when viewed over a reasonable time; and (2) whether "under all the relevant circumstances a reasonably prudent operator would, for purposes of making a profit and not merely for speculation, continue to operate [the lease] in the manner in which [the lease] in question was operated." *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 690–91 (1959). We concluded further that the affidavit of appellee Rosenthal established conclusively that a reasonably prudent operator would, in the present circumstances, have expected future profits and, therefore, would have continued to operate the lease. Accordingly, we determined that the summary judgment in favor of the lessees should be affirmed.

On motion for rehearing, the lessors assert that: (1) the "reasonably prudent operator" test does not apply in a case where a total physical cessation of production (as distinguished from merely unprofitable production) occurs and continues more than sixty days; and (2) the summary judgment evidence does not show conclusively that physical production did not cease for sixty consecutive days. In response, the lessees argue that: (1) the lessors did not raise the alleged inapplicability of the "reasonably prudent operator" test in their response to the motion for summary judgment and, therefore, waived that issue; and (2) the summary judgment evidence does establish conclusively that no physical cessation of production occurred for sixty consecutive days. We conclude that the lessors are correct.

### APPLICABILITY OF THE "REASONABLY PRUDENT OPERATOR" TEST

■ *Skelly Oil Co. v. Archer* and *Clifton v. Koontz* were both cases in which *some* physical production was present, and the issue was whether the production was "in paying quantities." In discussing the effect of the cessation-of-production clause, the court in *Clifton* stated:

> After cessation of production in paying quantities, the lessee has 60 days of "grace" in which to save his leasehold, *however, if production never ceased*, as is the case here, the 60–day clause is not definitive of the period over which the trier of the facts must determine whether a lease is producing in paying quantities.

325 S.W.2d at 690 (emphasis added). We read the emphasized portion of the above quotation to mean "if *physical* production never *completely* ceased," then the 60–day period is not definitive. The logical corollary to this interpretation is that if physical production *does* completely cease, the 60–day period *is* definitive and drilling or reworking operations must commence within that time.

Further, the court in *Clifton* went on to state:

> To apply the 60–day clause as contended by petitioners would mean that the respondents would have been required to immediately commence drilling operations, upon sustaining a slight loss for one month, without regard to whether they believed the next month's production might be profitable for the reason that if they were in error and suffered another slight loss, the lease would terminate.

325 S.W.2d at 690. The court was obviously concerned with the unreasonableness of requiring an operator to determine, based on experience from a relatively short time span, whether a lease is operating "profitably." Given the inconsistent production history of many wells, a slight loss experienced in one month may give virtually no indication whatever that the capacity to produce in paying quantities has permanently ceased. Hence, requiring a showing that the operator failed to respond to such circumstances in a reasonably prudent way before terminating the lease is a reason-

able construction of the parties' agreement and produces a fair result.

A total physical cessation of production, on the other hand, would in most cases convey a much less ambiguous message: either a well is in need of reworking or repair, or it has permanently drained the reservoir. In either case, it is more reasonable in such circumstances to expect the operator to take immediate action or suffer termination of the lease.

Texas cases both before and after *Clifton* have held that a total cessation of physical production for the number of consecutive days stated in the lease's cessation-of-production clause automatically terminates the lease, without regard to the reasonableness of the operator's actions. *See Samano v. Sun Oil Co.*, 621 S.W.2d 580, 584 (Tex.1981) ("When production stopped on May 4, 1977, during the secondary period, Sun had an express sixty days to drill or rework the well. When it failed to do so, the lease by its express terms automatically terminated."); *Geo–Western Petroleum Development, Inc. v. Mitchell*, 717 S.W.2d 734, 736 (Tex.App.1986, no writ) ("The fact that a reasonably prudent operator could have produced oil in paying quantities and made a profit from his operations during the sixty-day period was immaterial since the lease terminated by its own special provision."); *Sunray DX Oil Co. v. Texaco, Inc.*, 417 S.W.2d 424 (Tex.Civ.App. 1967, writ ref'd n.r.e.); *Hall v. McWilliams*, 404 S.W.2d 606, 608 (Tex.Civ.App. 1966, writ ref'd n.r.e.) ("[T]here was no production from the lease in question and no drilling or reworking operations on the lease for more than 60 days. The trial court correctly held that the lease terminated under its own terms."); *Wainwright v. Wainwright*, 359 S.W.2d 628, 630 (Tex.Civ.

App.1962, writ ref'd n.r.e.) ("The question in [*Clifton v. Koontz*] was whether production in paying quantities had ceased. In our case the question is whether all production had ceased for 90 days.... We do not think the holding in *Clifton v. Koontz* has application here."); *Woodson Oil Co. v. Pruett*, 281 S.W.2d 159 (Tex.Civ. App.1955, writ ref'd n.r.e.). At least two noted commentators echo this view. *See* 4 E. Kuntz, *Oil and Gas* § 47.3 (1972); 3 H. Williams, *Oil and Gas Law* §§ 616.1, 616.2 (1989).

We hold that in the circumstances of the present case, the reasonably prudent operator test of *Clifton* and *Skelly Oil* is not applicable.[3]

## PRESERVATION OF ERROR

■ The lessees argue, however, that the issue of whether a complete cessation of physical production occurred for more than sixty consecutive days was not raised by the lessors in their reply to the lessees' motion for summary judgment, and that as a result the issue was waived. We disagree.

In their petition, the lessors pleaded that the lease had terminated due to a "failure of production in paying quantities *and cessation of production.*" (Emphasis added.) This was certainly sufficient to raise the issue of cessation of physical production as an alternate theory of recovery. Accordingly, when the lessees sought summary judgment, they bore the burden of conclusively negating at least one element of *each* theory. Indeed, the lessees acknowledged the presence of the lessors' alternate theory in their motion for summary judgment itself: "Plaintiffs have alleged a termination of the subject Oil and Gas lease

---

**3.** In view of the fact that this case will be remanded to the trial court, we deem it appropriate to caution against an overly rigid application of the cessation-of-operation clause:

> The fact that the event which is designed to prevent termination [of the lease] is the commencement of drilling or reworking operations gives some indication of the purpose of the clause and the intention of the parties. It indicates that the parties are concerned with a situation where cessation of production is of

the type that is remedied by drilling or reworking operations. Thus, the parties must have intended that the clause would become operative if a dry well is drilled or if a producing well ceases to be capable of producing in paying quantities. A literal application of the clause to every temporary cessation of production could lead to absurd and unintended results.

2 E. Kuntz, *Oil and Gas* § 26.13, at 416–17 (1989).

as a result of an alleged failure of production in paying quantities and cessation of production."

The lessors' appeal simply challenges the legal sufficiency of the grounds and evidence to entitle the lessees to summary judgment on the cause of action pleaded. Therefore, the lessors' failure to assert a particular area of insufficiency in their reply to the motion did not result in waiver. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d at 678.

## THE SUMMARY JUDGMENT EVIDENCE

 Regarding the sufficiency of the summary judgment evidence, the lessors argue that the evidence did not conclusively establish the absence of a period of sixty consecutive days of no physical production from the lease. Evidence submitted by the lessees showed that in January 1987 the lease produced one barrel of oil, in February produced zero barrels, and in March produced twelve barrels. However, neither Rosenthal's affidavit nor the charts submitted therewith showed the exact day in January that the one barrel was produced or the exact day or days in March that the twelve barrels were produced. The summary judgment evidence leaves open the possibility that the one January barrel was produced in *early* January and the twelve March barrels were produced in *late* March, and therefore does not rule out the possibility that sixty consecutive days passed without the production of any oil.

The lessees assert, however, that evidence offered in support of the lessors' own motion for partial summary judgment establishes that the well produced oil without interruption during the relevant period. Even assuming that the evidence to which the lessees have reference—an excerpt from Rosenthal's deposition—could properly be considered as part of the basis for the *lessees'* summary judgment (it was not referred to in the lessees' motion), nonetheless it does not support the summary judgment. In the deposition excerpt, Rosenthal testified that even when a well does not produce enough oil to put into tanks, it still "produces" a small amount that stays in the casing. This testimony, however, was in general terms and was given in response to a question regarding oil production in November 1986. It does not establish as a matter of law that the lease in question did not cease physical production of oil for sixty consecutive days during the period January through March 1987. The lessors' motion for rehearing is granted. Points of error two and three are sustained.

The judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings.