**Randy RIDENOUR d/b/a Randy Ridenour Independent, Appellant,**

v.

**Kit HERRINGTON and Howard Jackson, Appellees.**

No. 10–00–040–CV.

Court of Appeals of Texas, Waco.

April 25, 2001.

Tamara Gayle Lovell, Frank D. Chandler, Chandler & Chandler, P.C., Dallas, for appellant.

Alan M. Bristol, Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

This is an oil and gas case. The issue is cessation of production in paying quantities. The trial court granted summary judgment, holding that an oil and gas lease had terminated according to its terms and conditions. We affirm the summary judgment.

### HISTORICAL AND PROCEDURAL BACKGROUND

In 1995, Randy Ridenour, d/b/a Randy Ridenour Independent, entered into an oil and gas lease with Kit Herrington and Howard Jackson. The lease was on mineral interest located in Navarro County, Texas.

Corsicana, the county seat of Navarro County, is the home of the oldest commercial oil field west of the Mississippi River. This field has been producing since the late 1800's. It was discovered when the city of Corsicana was drilling a water well. Historically the oil production from this area is from shallow wells. Many old wells in the area continue to produce small quantities of oil. Production is marginal, but the cost of production is nominal. These marginal production wells are frequently referred to as "stripper" wells.

Ridenour had operated the wells on the Herrington/Jackson lease prior to the 1995 lease. There was some question as to whether the prior lease had terminated, so the parties executed a new lease with some additional terms. The 1995 lease had a one-year primary term. It also had the usual provision that the lease continued beyond the primary term "as long thereafter as oil, gas or other mineral is produced from said land. . . ." This clause has been judicially construed to mean that the lease continues in force for so long as oil, gas or other minerals are produced in "paying quantities."

The lease also had a clause that is sometimes used to further define "production in paying quantities." The particular provision in this lease was stated as follows:

> The primary term of this lease shall be one year, and after the expiration of one year from the date hereof, paying production as that term is interpreted by Texas law shall be necessary to perpetuate this lease. *Cessation of paying production after the primary term for a period of sixty days shall cause this lease to terminate.*

(Emphasis added)(C.R. page 16).

Herrington/Jackson sued Ridenour alleging that there had been no "paying production" and "that at least one period of sixty days or more, without production, has occurred after expiration of the primary term." Approximately one year after the case was filed, Herrington/Jackson moved for summary judgment. The basis of the motion was stated as follows:

Plaintiffs show hereby that the summary judgement evidence clearly establishes a cessation of paying production sufficient to cause a termination of the subject lease.... Plaintiffs will further show that when the facts and circumstances of termination are clearly demonstrated to the court, such an issue becomes an issue of law rather than fact and is the proper subject of a motion for summary judgement or instructed verdict.

(C.R. page 14).

In support of the motion for summary judgment, Herrington/Jackson filed an affidavit of an oil and gas expert, a business records affidavit attaching invoices for work on the well, and certified copies of Railroad Commission P 4 reports. These reports are filed with the Railroad Commission each month to report the oil produced from each lease.

In response to the summary judgment motion and evidence, Ridenour responded and filed his own affidavit in support of his response. He asserts in his response:

The attached affidavit of Defendant Randy Ridenour puts facts into issue regarding the second prong of that test, "whether a reasonably prudent operator would, for the purpose of making a profit and not merely for speculative purposes, continue to operate the subject lease."

(C.R. page 69). Ridenour's affidavit states that he is "unaware of any period of sixty (60) days or more in which the Lease did not produce in paying quantities" and that in his opinion "a reasonably prudent operator would continue to operate this lease for the purpose of obtaining a profit from such production." (C.R. page 77).

The trial court granted the summary judgment, holding that the lease had terminated according to its terms and conditions. The trial court did not specify the manner in which the lease provision re-

garding cessation of production had been violated, thus causing the lease to terminate.

## SUMMARY JUDGMENT

■■■ The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. See *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains. See *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962). The summary judgment motion must expressly present specific grounds for summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 480 (Tex.App.—Dallas 1995, writ denied).

■■ When, as here, the plaintiff moves for summary judgment, the plaintiff must conclusively prove all elements of its cause of action as a matter of law. *Nationwide Property & Casualty Ins. Co. v. McFarland*, 887 S.W.2d 487, 490 (Tex.App.-Dallas 1994, writ denied); *see* TEX.R.CIV.P. 166a(c). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). Once the plaintiff establishes its right to summary judgment, the burden then shifts to the defendant as non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary

judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Muckelroy v. Richardson Indep. Sch. Dist.,* 884 S.W.2d 825, 828 (Tex. App.—Dallas 1994, writ denied).

The question on appeal is whether the summary-judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the cause of action. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Where, as here, the summary judgment does not state the grounds upon which it was granted, the non-movant must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *Orozco v. Dallas Morning News, Inc.,* 975 S.W.2d 392, 394 (Tex. App.—Dallas 1998, no pet.); *Thomson v. Norton,* 604 S.W.2d 473, 476 (Tex.Civ. App.—Dallas 1980, no writ). If a movant does not show its entitlement to judgment as a matter of law, we must remand the case to the trial court for further proceedings. *See Gibbs,* 450 S.W.2d at 829; *Texas Stadium Corp. v. Savings of Am.,* 933 S.W.2d 616, 618 (Tex.App.—Dallas 1996, writ denied).

The standards for reviewing summary judgment under Rule 166a(c) are well established. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Orozco,* 975 S.W.2d at 394. In reviewing a summary judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon,* 690 S.W.2d at 548–49; *Walstad v. Dallas County Bail Bond Bd.,* 996 S.W.2d 314, 315 (Tex.App.—Dallas 1999, no pet.).

### APPLICABLE LAW

■ The two leading cases in Texas on production-in-paying-quantities and cessation-of-production are *Garcia v. King* and *Clifton v. Koontz. Clifton v. Koontz,* 160 Tex. 82, 325 S.W.2d 684 (1959); *Garcia v. King,* 139 Tex. 578, 164 S.W.2d 509 (1942). *Garcia* established that the clause in an oil and gas lease that the lease will continue after the primary term "for so long thereafter as oil, gas and other minerals is produced" meant paying production, or production in paying quantities. *Garcia,* 164 S.W.2d at 513. This meant that the well could not be held by the operator for speculation with little or no production. *Clifton* established that without a specific definition of the time period to measure production-in-paying-quantities, it was measured over a reasonable period of time and that other "savings clauses," such as continuous operations, did not come into effect until production in paying quantities had ceased. *Clifton,* 325 S.W.2d at 690. When a lease fails to define what constitutes a temporary cessation of production, Texas courts have repeatedly found that a "temporary cessation" clause is "necessarily implied" in the lease. *Midwest Oil Corp. v. Winsauer,* 159 Tex. 560, 323 S.W.2d 944, 946 (1959); *Guinn Investments, Inc. v. Ridge Oil Company et. al.,* No. 02–00–055–CV, slip op. at 10, —— S.W.3d ——, ——, 2001 WL 253430 (Tex. App.—Fort Worth March 15, 2001, no pet. h.).

■ But if the lease defines the period for which production-in-paying-quantities is to be measured, the court does not resort to a "reasonable period of time"

over which to evaluate the profitability of production. As noted above, the lease in this case defined the time period over which production was to be evaluated to determine if production-in-paying-quantities had ceased as 60 days. Further, "no analysis of whether production was in paying quantities is necessary if the evidence establishes no production at all." *Natural Gas Pipeline Co. of America v. Pool*, 30 S.W.3d 618, 626 (Tex.App.—Amarillo 2000, pet. filed); *see also Natural Gas Pipeline Co. of America v. Pool*, 30 S.W.3d 639, 647 (Tex.App.—Amarillo 2000, pet. filed); *Bachler v. Rosenthal*, 798 S.W.2d 646, 650 (Tex.App.—Austin 1990, writ denied.). A total, physical cessation of production conveys an unambiguous message: either a well is in need of reworking or repair, or it has permanently drained the reservoir. In either case, it is more reasonable in such circumstances to expect the operator to take immediate action or suffer termination of the lease. *Bachler*, 798 S.W.2d at 650. Cessation of production for the number of consecutive days stated in the lease's cessation-of-production clause automatically terminates the lease, without regard to the reasonableness of the operator's actions. *Id.*

### APPLICATION

The summary judgment evidence in this case is undisputed on at least one issue: there was no production from this lease from February 1999 to July of 1999, a period of six months. We hold that reasonable minds could not differ that the failure to have any production for a period of time longer than 60 days, under this lease, constitutes the failure to have production in paying quantities. Thus, as a matter of law, Herrington/Jackson proved that the lease had ceased production in paying quantities and accordingly the lease had terminated by its own terms and conditions. The trial court did not err in

granting summary judgment. The trial court's judgment is affirmed.