**Opinion issued February 19, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00953-CV

_____

**CLARENCE STUMHOFFER, HEIR OF THE ESTATE OF ROBERT BRIAN STUMHOFFER, DECEASED, Appellant**

**V.**

**DANIEL PERALES AND ERIN PERALES, Appellees**

---

**On Appeal from the Probate Court No. 4
Harris County, Texas
Trial Court Case No. 390174-401**

---

## OPINION ON REHEARING

Appellees, Daniel and Erin Perales (collectively, "Perales"), sued the appellant, the independent administrator and heir of the Estate of Robert Brian Stumhoffer ("the Estate"), seeking to recover attorney's fees and costs incurred in

defending an adverse claim to title on real property sold to Perales by Robert Stumhoffer, decedent. In a single issue, the Estate challenges the trial court's grant of summary judgment in favor of Perales. On September 25, 2014, we issued an opinion sustaining the Estate's challenge to the trial court's grant of summary judgment.

Perales subsequently moved for rehearing. We deny the motion for rehearing. However, we withdraw our September 25, 2014 opinion and judgment and issue this opinion and judgment in their place. Our disposition remains unchanged.

We reverse and remand.

### Background

In December 2007, Perales purchased real property at 5246 Piping Rock in Houston, TX ("the Property") from Stumhoffer pursuant to a general warranty deed. The deed provided, in relevant part, that Stumhoffer conveyed the Property to Perales and stated:

> TO HAVE AND TO HOLD the above-described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto said GRANTEE [Perales] and GRANTEE'S heirs and assigns forever, GRANTOR [Stumhoffer] does hereby bind GRANTOR and GRANTOR'S heirs, executors, and administrators to warrant and forever defend, all and singular, the said premises unto the said GRANTEE and GRANTEE'S heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

2

Perales had the Property surveyed and learned that the property line ran seven feet east of the existing fence that divided his yard from that of his neighbor, Allen Lewis. Perales informed Lewis of his intention to move the fence and install a sprinkler system. Lewis disputed the results of the boundary survey, claiming that he owned the seven-foot strip of land by adverse possession, or alternatively, that he had acquired an easement on it due to a sewer line that Lewis alleged ran from his home under the disputed land. Lewis filed suit against Perales to establish title to the land by adverse possession, claiming he owned the seven-foot strip of land. The suit was resolved in Perales's favor. *See Allen & Martha Lewis Revocable Trust v. Perales*, No. 01-09-00140-CV, 2010 WL 3212125, at *9 (Tex. App.—Houston [1st Dist.] Aug. 12, 2010, no pet.) (mem. op.) (affirming trial court's grant of summary judgment in favor of Perales). Perales contends that he incurred approximately $70,000 in attorney's fees over the several years his dispute with Lewis ("Lewis's suit") remained pending.

While Lewis's suit was on-going, Perales sought indemnification from Stumhoffer for "all costs and expenses incurred . . . in the . . . litigation" and for "an equivalent of the fair market value of any portion of [the Property] that might be successfully claimed by [Lewis] in the above suit." Following Stumhoffer's death and the final resolution of Lewis's suit, Perales filed suit against the Estate, alleging that it owed a duty to defend him against Lewis's claims, a duty which the

Estate failed to acknowledge or discharge. Specifically, Perales alleged a cause of action for breach of the general warranty deed by which Stumhoffer conveyed the Property to him. Based on that cause of action, Perales also alleged that "[t]here exists a real and substantial controversy involving genuine conflict of tangible interests, and Perales requests this court to enter a determination of the parties' obligations and rights pursuant to [Civil Practice and Remedies Code section] 37.010." Perales also requested attorney's fees under Civil Practice and Remedies Code chapters 37 and 38.

Perales moved for summary judgment on his claim against the Estate, arguing that Stumhoffer transferred the Property to him under a general warranty deed in which "Stumhoffer promised to warrant and defend the property conveyed to Perales against every person claiming the same or any part thereof." Perales asserted that Stumhoffer "knew that he and his predecessors in interest had allowed conditions on the property to develop so as to allow [Lewis] to encroach onto his land and allow Lewis to have a colorable adverse possession claim for a portion of the property." Thus, Perales sought a declaration that the Estate had an obligation, arising under the general warranty deed, to reimburse him for the attorney's fees and other costs he had incurred in defending against Lewis's suit and that the Estate breached that duty. Perales included exhibits setting out the amount of his costs and attorney's fees, totaling $74,171.01, all of which Perales incurred in

4

defending his title against Lewis's adverse possession claim. In his post-hearing brief on the motion for summary judgment, Perales also argued that he was entitled to recover the attorney's fees incurred in defending against Lewis's suit from the Estate based on Civil Practice and Remedies Code sections 37.009 and 38.001, governing the award of attorney's fees in declaratory judgment actions and breach of contract actions, respectively.

The trial court granted summary judgment in favor of Perales, and it entered final judgment awarding Perales $67,318.01, representing Perales' "costs incurred in defending title to property sold to [him by Stumhoffer], which includes costs and attorney's fees, plus 6% interest compounded annually from [the] date of judgment."

## Notice of Appeal

The original notice of appeal named the Estate as the party appealing the trial court's final judgment, although the caption on the notice and all other pleadings filed in the trial court indicated that the lawsuit was brought against and was defended by the independent executor. An estate is not a legal entity that can sue or be sued. *See Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex. 1987) (holding that estate is not legal entity and cannot be sued in that capacity); *Casillas v. Cano*, 79 S.W.3d 587, 590 (Tex. App.—Corpus Christi 2002, no pet.) (holding that "[a]n estate is not a legal entity and therefore cannot sue or be sued" in

5

concluding that estate was not proper party to appeal where appellant died during pendency of case). Accordingly, the Estate sought leave to amend its notice of appeal to name the heir and proposed administrator of the Estate as the party appealing the trial court's judgment on behalf of the Estate. Perales argues that we should not allow the Estate to amend its notice of appeal and that we should dismiss the appeal.

## A. Facts Relevant to Notice of Appeal

The underlying suit was brought against, and defended by, Frieda Stumhoffer as the independent administrator of the Estate. However, Frieda Stumhoffer died while this case was pending in the trial court, and the attorney for the Estate filed a suggestion of death, informing the trial court that Frieda Stumhoffer had died and that the Estate was seeking a substitute administrator. Without waiting for a new administrator to be named, the trial court entered final judgment against Frieda Stumhoffer "in her capacity as Independent Administratrix or Heir of the Estate (or any successive Administrator, Executor and/or Heir)."

The Estate filed a timely notice of appeal. The notice of appeal named the Estate as the party appealing the trial court's final judgment, but the caption on the notice indicated that the lawsuit was brought against and was defended by the independent executor, Frieda Stumhoffer. After both parties had filed their

6

appellate briefs, the Estate moved for leave to amend its notice of appeal. The amended notice of appeal states that "Clarence Stumhoffer, an heir of and proposed successor independent administrator of the Estate of Robert Brian Stumhoffer on behalf of the Estate of Robert Brian Stumhoffer, deceased," appeals the trial court's final judgment in favor of Perales. Perales filed a motion to strike the amended notice of appeal and dismiss the appeal.

## B.    Amending a Notice of Appeal

Texas Rule of Appellate Procedure 25.1(g) provides:

> An amended notice of appeal correcting a defect or omission in an earlier filed notice may be filed in the appellate court at any time before the appellant's brief is filed. The amended notice is subject to being struck for cause on the motion of any party affected by the amended notice. After the appellant's brief is filed, the notice may be amended only on leave of the appellate court and on such terms as the court may prescribe.

TEX. R. APP. P. 25.1(g). The Texas Supreme Court has indicated that appellate courts should freely grant leave to amend a notice of appeal when leave is sought. *See Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex. 2008) (per curiam). When perfecting the appeal, "the factor which determines whether jurisdiction has been conferred on the appellate court is not the form or substance of the bond, certificate or affidavit, but whether the instrument 'was filed in a bona fide attempt to invoke appellate court's jurisdiction.'" *Id.* (quoting *Walker v. Blue Water Garden*

7

*Apartments*, 776 S.W.2d 578, 581 (Tex. 1989)); *see also Sweed v. Nye*, 323 S.W.3d 873, 875 (Tex. 2010) (per curiam) ("[A] timely filed document, even if defective, invokes the court of appeals' jurisdiction."). "[I]f the appellant timely files a document in a bona fide attempt to invoke the appellate court's jurisdiction, the court of appeals, on appellant's motion, must allow the appellant an opportunity to amend or refile the instrument required by law or our Rules to perfect the appeal." *Park Warwick, L.P.*, 244 S.W.3d at 839. We are to apply the rules of procedure liberally to reach the merits of the appeal whenever possible. *Id.*

## C.    Death of an Administrator

Rule of Civil Procedure 153 provides:

> When an executor or administrator shall be a party to any suit, whether as plaintiff or as defendant, and shall die or cease to be such executor or administrator, the suit may be continued by or against the person succeeding him in the administration, or by or against the heirs, upon like proceedings being had as provided in the two preceding rules, or the suit may be dismissed, as provided in Rule 151.

TEX. R. CIV. P. 153. Rule 152 provides that when a defendant dies, "upon the suggestion of death being entered of record in open court, or upon petition of the plaintiff, the clerk shall issue a scire facias for the administrator or executor or heir requiring him to appear and defend the suit and upon the return of such service, the suit shall proceed against such administrator or executor or heir." TEX. R. CIV. P.

152. Rule 151 addresses how suits may proceed after the death of the plaintiff and provides that the suit may be dismissed if the heir, administrator, or executor fails to appear after service of scire facias. TEX. R. CIV. P. 151.

## D.    Analysis

Here, the notice of appeal named only the Estate as the appealing party, in spite of the fact that an estate is not a legal entity that can sue or be sued. *See Henson*, 734 S.W.2d at 649. However, the caption on the notice indicated that the suit had been filed against and defended by Frieda Stumhoffer as the independent administrator of the Estate. And the trial court's judgment, issued after the attorney for the Estate had filed the suggestion of death, was entered against Frieda Stumhoffer in her capacity as the independent administrator or against "*any successive* Administrator, Executor and/or Heir." (Emphasis added.) Thus, the Estate's original notice of appeal was a bona fide attempt to invoke our jurisdiction. *See Park Warwick, L.P.*, 244 S.W.3d at 838–39 (holding, in suit asserting subrogation rights against alleged tortfeasor, that court of appeals erred in refusing to grant insurance company leave to amend its notice of appeal after it had filed notice of appeal in name of its insured even though insured did not wish to appeal).

Furthermore, the parties agree that Clarence Stumhoffer had been declared an heir of the Estate and had applied for appointment as the independent

administrator. As an heir, he is a proper party to continue the appeal following Frieda Stumhoffer's death. *See* TEX. R. CIV. P. 153; *see also Casillas*, 79 S.W.3d at 591 (holding, in context of Rules 151 and 152, that "a deceased party may be represented by an executor, an administrator or an heir" and that "[a]n heir would be the appropriate party when there is no executor or administrator"). Thus, the amended notice of appeal corrects the defect in the original notice of appeal. Because the Estate timely filed a document in a bona fide attempt to invoke our jurisdiction, we "must allow the appellant an opportunity to amend or refile the instrument required by law or our Rules to perfect the appeal." *See Park Warwick, L.P.*, 244 S.W.3d at 838–39.

Accordingly, we grant the motion for leave to amend the notice of appeal, and we deny the motion to strike the amended notice of appeal and dismiss the appeal.

### Summary Judgment

In its sole issue on appeal, the Estate argues that the trial court erred in granting Perales's motion for summary judgment alleging that the Estate had a duty to indemnify him for attorney's fees and costs that he incurred in defending against Lewis's suit.

## A.    Standard of Review

An appellate court reviews de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional summary judgment motion, the movant must establish that "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c); *see Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Id.* at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor. *Id.* at 549.

When the plaintiff moves for summary judgment, the plaintiff must conclusively prove all elements of its cause of action as a matter of law. *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex. App.—Dallas 2007, pet. denied). If a movant does not show its entitlement to judgment as a matter of law, we must remand the case to the trial court for further proceedings. *Ridenour v. Herrington*, 47 S.W.3d 117, 121 (Tex. App.—Waco 2001, pet. denied). Unless the movant's summary judgment evidence is legally sufficient, the non-movant is not required to produce summary judgment evidence to avoid an adverse summary judgment. *Hubert v. Ill. State Assistance Comm'n*, 867 S.W.2d 160, 163 (Tex. App.—Houston [14th Dist.] 1993, no pet.).

## B.    Duty to Defend Under the Warranty Deed

Perales moved for summary judgment on the ground that the general warranty deed obligated Stumhoffer and his heirs and assigns to defend his title to the Property from Lewis's claims, and, in the absence of providing such a defense, the Estate was obligated to indemnify Perales for the attorney's fees associated with defending against Lewis's suit.

Perales relies upon the language in the deed which states that Stumhoffer and his heirs "warrant and forever defend, all and singular, the said premises unto the said GRANTEE and GRANTEE'S heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof." This

language is taken from Property Code section 5.022. Section 5.022 states that this language "conveys a fee simple estate in real property with a covenant of general warranty." TEX. PROP. CODE ANN. § 5.022 (Vernon 2004). Furthermore, Texas courts have long recognized that the language cited by Perales creates a general warranty of title when included in a deed conveying real property. *See, e.g.*, *Bass v. Harper*, 441 S.W.2d 825, 826 (Tex. 1969) (observing that language "and I do hereby bind myself, my heirs, executors and administrators to Warranty and Forever Defend all and singular the said premises unto the said W.O. Miller, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof" constitutes "a general warranty"); *Garza v. Garza*, No. 04-11-00310-CV, 2013 WL 749727, at *4 (Tex. App.—San Antonio Feb. 27, 2013, no pet.) (mem. op.) ("Both the initial deed and the corrected deed from Thelma to S.M.G. included a general warranty clause in which Thelma promised to 'warrant and forever defend' the premises against anyone claiming it."). Thus, the language relied upon by Perales creates a general warranty of title.

Perales has cited no authority for the proposition that a general warranty deed creates a duty on the part of the seller to reimburse the buyer for attorney's fees incurred by the buyer in defending a third party's unsuccessful adverse possession claim. Rather, a general warranty deed expressly binds the grantor to defend against title defects created by himself and all prior titleholders in a suit by

13

a person "lawfully claiming, or to claim the same, or any part thereof." *Munawar v. Cadle Co.*, 2 S.W.3d 12, 16 (Tex. App.—Corpus Christi 1999, pet. denied) (citing William V. Dorsaneo III et al., *Tex. Litigation Guide* § 254.02 (1994)). The purpose of a general warranty clause is to indemnify the purchaser against a loss or injury he may sustain by a defect in the seller's title. *Gibson v. Turner*, 294 S.W.2d 781, 787 (Tex. 1956); *Davis v. Andrews*, 361 S.W.2d 419, 424–25 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.); *see also Triplett v. Shield*, 406 S.W.2d 941, 947 (Tex. Civ. App.—Eastland 1966, writ ref'd n.r.e.) ("A covenant of general warranty means that the real property conveyed is free from encumbrances."). To establish a breach of the warranty of title, the warrantee must show that at the time the land was conveyed, there was a superior title outstanding in another person, and the warrantee was evicted by the superior title holder. *Garza*, 2013 WL 749727, at *5 (citing *Felts v. Whitaker*, 129 S.W.2d 682, 685–86 (Tex. Civ. App.—Fort Worth 1939), *aff'd*, 155 S.W.2d 604 (Tex. 1941)); *see also Gibson*, 294 S.W.2d at 787 ("[T]here can be no breach of warranty and no recovery of damages for breach of warranty unless and until there has been an actual or constructive eviction of the lessee.").

"[T]he nature and purpose of [a covenant of general warranty] is for the indemnity of the purchaser against the loss or injury he may sustain by a failure or defect in the vendor's title." *City of Beaumont v. Moore*, 202 S.W.2d 448, 453

(Tex. 1947). Thus, a seller has a duty to defend a title passed by a general warranty. However, the obligation of providing monetary indemnity applies only to loss sustained by a failure in the warrantor's title. *See id.* There is no loss when the title does not fail; thus, there is no indemnification. *See id.* ("The covenant against encumbrances is embraced within the general warranty clause, and it is the legal duty of the grantor to pay off and discharge all liens and encumbrances incurred prior to the conveyance which are not assumed by the warrantee.").

Moreover, even upon a showing of breach of a covenant of general warranty of good title, without more, the purchaser's damages do not include attorney's fees. *See Turner v. Miller*, 42 Tex. 418 (1874) (stating that court had found no cases "wherein counsel fees have been allowed as damages in a suit upon a general warranty alone"; and holding that "the correct rule is . . . not to allow counsel fees in a suit on a general warranty, as in this case, when there is no question of fraud, imposition, or malicious conduct involved"). Rather, the proper measure of damages for breach of a general warranty of good title is the consideration paid for the conveyance or for whatever portion of the conveyance that was subject to a failure of title. *See Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *Ragsdale v. Langford*, 358 S.W.2d 936, 938 (Tex. Civ. App.—Austin 1962, writ ref'd n.r.e.) ("The measure of damages in a suit for breach of warranty is governed by the rule applicable to partial failure of title, that the damages will

15

bear the same proportion to the whole purchase money as the value of the part to which the title fails bears to the whole premises estimated at the price paid.") (citing *Moore*, 202 S.W.2d at 453); *see also Turner*, 42 Tex. 418 ("The rule has been laid down in covenants for title in this State, that upon failure of title the measure of damages is the purchase-money, with interest.").

Here, Perales cannot establish a breach of the warranty of title. Stumhoffer, and subsequently his Estate, was only bound to defend against or indemnify for loss that resulted from a defect in Stumhoffer's title that encumbered the title at the time the Property was conveyed. *See Gibson*, 294 S.W.2d at 787; *Moore*, 202 S.W.2d at 453; *see also Crowder v. Scheirman*, 186 S.W.3d 116, 119 (Tex. App.— Houston [1st Dist.] 2005, no pet.) (holding that indemnity agreements must be strictly construed to give effect to parties' intent as expressed in their agreement) (citing *Ideal Lease Serv. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1984)). The litigation of Lewis's claim against the Property ended with a determination that there was no title defect. "[T]he nature and purpose of [a covenant of general warranty] is for the indemnity of the purchaser against the loss or injury he may sustain by a failure or defect in the vendor's title." *Moore*, 202 S.W.2d at 453; *see Turner*, 42 Tex. 418 (stating that recovery of attorney's fees in suit on general warranty is not allowed when there is no question of fraud, imposition, or malicious conduct). Because there was no failure or defect in Stumhoffer's title,

16

Perales cannot depend on the general warranty language to support his argument that he is entitled to recover attorney's fees from the Estate.

Perales argues that this is not a suit for breach of the title warranty, but a suit for breach of a separate duty to defend regardless of any defect in the title. However, Perales does not cite any agreement creating a separate duty to defend aside from the language of the general warranty of title, and the cases Perales relies on to support this argument are distinguishable from the present case. Perales cites *Rowe v. Heath*, *Miller v. Gann*, and *Crossland v. Lange*, among others, in arguing that Stumhoffer's failure to defend Perales against Lewis's claims gave rise to an obligation to indemnify Perales for the attorney's fees he expended in defending against Lewis's suit. These cases do not support Perales's claim.

In *Rowe v. Heath*, the buyer sued the seller following his eviction from the land upon a successful claim of superior title by a third party. 23 Tex. 614 (1859). The seller sold the land pursuant to a general warranty deed containing the language that Perales relies upon here, namely that the seller would "warrant and forever defend the right and title to said land, against all legal claim or claims to said land or premises." *Id.* Once the third party filed suit alleging superior title, the buyer contacted the seller and proposed a cancellation of the sale. *Id.* The seller assured the buyer "that his title was good, and could not be defeated by [the adverse claimant]," and the seller then promised the buyer that he would pay for all

17

improvements on the property and pay all expenses of defending the suit if the buyer would stay on the land. *Id.* The seller defended the suit in part, but abandoned the defense before the trial occurred. The buyer was evicted from the property and filed a claim against the seller for the loss of the sale-price of the land, the cost of his improvements to the land, and the attorney's fees and other expenses of litigation. *Id.* The supreme court upheld the award of attorney's fees in that case because the buyer "relied on the express promise and undertaking of the [seller] to pay the expenses of the suit" and the evidence was sufficient to warrant the jury's findings on that ground. *Id.*; *see also Turner*, 42 Tex. 418 (stating that buyer in *Rowe* "recovered counsel fees upon a special promise that the [seller] would bear the expense of litigation, if the [buyer] would defend the suit, which he did, and failed by reason of a superior title"; concluding that holding in *Rowe* was reached based "expressly upon the special contract to pay counsel fees"; and holding that general rule in Texas is that counsel fees are not recoverable in suit on general warranty). Here, unlike in *Rowe*, no defect of title was found and no special agreement to pay attorney's fees existed between Stumhoffer and Perales.

In *Miller v. Gann*, a tract of land was purchased by Miller, Gann, and Perdue. No. 01-94-01210-CV, 1996 WL 659415, at *1 (Tex. App.—Houston [1st Dist.] Nov. 14, 1996, writ denied) (mem. op., not designated for publication).

18

Shortly after the 1968 purchase, the parties formed a partnership to develop the land and conduct business operations on it. *Id.* The complex dispute among the parties centered on whether the individuals or the partnership owned the land and whether Gann and Perdue had breached a fiduciary duty to Miller. *Id.* After years of litigation and several phases of trial, the trial court held that a 1970 deed to the land "contained a clause that specifically required Miller to defend Gann's and Perdue's title to the property." *Id.* at *9. This Court held that when Miller failed to defend the title to the property pursuant to that specific clause, Miller breached the contract, "giving rise to a valid claim by Gann and Perdue for attorney's fees." *Id.* No such clause exists in the instant case.

In *Crossland v. Lange*, the Corpus Christi Court of Appeals reversed a no-evidence summary judgment rendered in favor of the seller on the ground that a no-evidence motion for summary judgment was not the proper vehicle for questioning the legal sufficiency of a plaintiff's petition. No. 13-10-217-CV, 2010 WL 5020501, at *2–3 (Tex. App.—Corpus Christi Dec. 9, 2010, no pet.) (mem. op.). The court stated, "It appears that [the seller] is challenging whether [the buyers], in fact, have a cause of action for indemnity against her. That is an issue we do not decide here. . . . However, a no-evidence summary judgment motion is not the correct vehicle for determining a question of law." *Id.* Thus, *Crossland*

does not support a conclusion that attorney's fees are recoverable on a claim under a general warranty deed.

Perales does not cite, and we could not identify, any Texas authority that has held a seller liable under the covenant of general warranty in a general warranty deed for attorney's fees or other expenses of defending a title to real property against an unsuccessful claim arising from an alleged defect in the title. Nor does Perales cite any other special agreement or clause in the deed requiring Stumhoffer to reimburse Perales for attorney's fees under the circumstances presented in this case.

Because Perales failed to establish as a matter of law that Stumhoffer was obligated to reimburse him for the attorney's fees or other costs incurred in defending against Lewis's suit, the trial court erred in granting summary judgment in Perales's favor. *See* TEX. R. CIV. P. 166a(c); *Little*, 148 S.W.3d at 381 (holding that movant must establish that "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response").

## C. Attorney's Fees Based on Civil Practice and Remedies Code Sections 38.001 and 37.009

Perales also argued below that he was entitled to recover from the Estate the attorney's fees expended in his defense of Lewis's suit against him based on Civil Practice and Remedies Code section 37.009, which is part of the Texas Uniform

20

Declaratory Judgment Act ("UDJA"), and sections 38.001 and 38.004, governing an award of attorney's fees in breach of contract cases.[1]

"Texas has long adhered to the American Rule with respect to awards of attorney's fees, which prohibits the recovery of attorney's fees from an opposing party in legal proceedings unless authorized by statute or contract." *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013). Civil Practice and Remedies Code sections 37.009 and 38.001 are statutory provisions that allow, under certain circumstances, for a party to recover attorney's fees. Section 37.009 provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008). Section 38.001 provides that a "person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." *Id.* § 38.001(8) (Vernon 2008).

In his motion for summary judgment, Perales sought costs and attorney's fees incurred in the prior litigation against Lewis as damages for his claim that the Estate breached its duty arising under the general warranty deed, and he presented evidence that those fees totaled nearly $75,000. The trial court rendered judgment

---

[1] Perales argues that the Estate did not raise any issues "relating to the amount or the reasonableness" of the fees awarded. However, the Estate did argue that Perales was not entitled to any attorney's fees at all.

in favor of Perales and ordered the Estate to pay Perales $67,318.01 for the "costs incurred in defending title to property sold to [him] by Robert Brian Stumhoffer." However, these are not the types of attorney's fees contemplated by sections 37.009 and 38.001. *See id.* §§ 37.009, 38.001; *see also El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 366 (Tex. App.—Dallas 2005, no pet.) (observing that attorney's fees expended in prior litigation are recoverable only when provided for by contract or agreement between parties); *Martin-Simon v. Womack*, 68 S.W.3d 793, 797 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("In Texas, attorney's fees expended in prior litigation generally are not recoverable as damages; attorney's fees are recoverable only when an agreement between the parties so provides.").

Perales also argues that he is entitled to attorney's fees incurred in this litigation under section 38.004, which provides that a court may take judicial notice of the usual and customary attorney's fees and contents of a case file without receiving further evidence of attorney's fees in a proceeding before the court. TEX. CIV. PRAC. & REM. CODE ANN. § 38.004 (Vernon 2008). However, we have already concluded that Perales did not establish that the Estate breached any duty arising under the general warranty deed and that he is not entitled to recover his attorney's fees incurred in Lewis's suit as damages on that claim. Thus, Perales is not a prevailing party in this suit, as is required to recover attorney's fees

against the Estate under Civil Practice and Remedies Code chapter 38. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (providing that party must prevail on cause of action for which attorney's fees are recoverable and recover damages to obtain award of attorney's fees under section 38.001); *see also Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 733 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding that party may not use UDJA and section 37.009 to recover otherwise impermissible attorney's fees).

Thus, we conclude that neither section 37.009 nor section 38.001 entitles Perales to recover from the Estate his attorney's fees incurred in the prior litigation between himself and Lewis. Because, as a matter of law, Perales did not show his entitlement to judgment awarding him his attorney's fees and costs, the trial court erred in granting summary judgment in his favor and we must remand the case to the trial court for further proceedings. *See Ridenour*, 47 S.W.3d at 121.

We sustain the Estate's sole issue.

## Conclusion

We reverse the trial court's summary judgment and remand the case for further proceedings consistent with this opinion.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.

23